**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**MOLLY C.**

**Plaintiff,**

**v.**                                                              **1:19-CV-44**
                                                                         **(FJS)**

**ANDREW SAUL,**
**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.[1]**

_____

**APPEARANCES**                                    **OF COUNSEL**

**LEGAL AID SOCIETY OF**                   **ROSE PUANANI LANDAU, ESQ.**
**NORTHEASTERN NEW YORK**
40 New Street
Saratoga Springs, New York 12866
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**      **LAUREN E. MYERS, ESQ.**
**OFFICE OF REGIONAL**
**GENERAL COUNSEL – REGION II**
26 Federal Plaza – Room 3904
New York, New York 10278
Attorneys for Defendant

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff Molly C. brought this action pursuant to the Social Security Act, 42 U.S.C.

§ 405(g) ("Act"), seeking judicial review of a final decision of the Commissioner of Social

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul is automatically substituted as Defendant in this case.

Security (the "Commissioner"), denying her application for benefits.  *See generally* Dkt. Nos. 1,

11.  Pending before the Court are the parties' cross-motions for judgment on the pleadings

under Rule 12(c) of the Federal Rules of Civil Procedure.  *See* Dkt. Nos. 11, 18.

## II. PROCEDURAL HISTORY AND BACKGROUND

Plaintiff applied for benefits on April 1, 2016, alleging disability beginning October 19,

1993.  *See* Administrative Record ("AR") at 15.  Plaintiff filed a timely request for a hearing on

June 22, 2016.  *See id.*  A hearing was held on November 16, 2017, before Administrative Law

Judge Arthur Patane (the "ALJ").  *See id.* at 32-47.  Plaintiff's attorney, Ms. Landau,

represented her at the hearing. *See id.* at 15, 34.

On February 6, 2018, the ALJ issued a written decision in which he made the following

findings "[a]fter careful consideration of the entire record…"

1) Plaintiff "has not engaged in substantial gainful activity since April 1, 2016, the application date."

2) Plaintiff "has the following severe impairments: depressive disorder, borderline personality disorder, anxiety disorder, learning disorder, intellectual disability, attention-deficit hyperactivity disorder ("ADHD"), and post-traumatic stress disorder ("PTSD")."

3) Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."

4) Plaintiff "has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: [Plaintiff] is limited to performing simple and routine tasks which involve frequent, though not consistent, interactions with others."

5) Plaintiff "has no past relevant work."

6) Plaintiff "was born on October 19, 1993 and was 22 years old, which is defined as a younger individual age 18-49, on the date the application was filed."

7) Plaintiff "has at least a high school education and is able to communicate in English."

8) "Transferability of job skills is not an issue because [Plaintiff] does not have past relevant work."

9) "Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform."

10) Plaintiff "has not been under a disability, as defined in the Social Security Act, since April 1, 2016, the date the application was filed."

*See* AR at 17-26 (citations omitted).

The ALJ's decision became the Commissioner's final decision on November 16, 2018, when the Appeals Council of the Social Security Administration denied Plaintiff's request for review. *See* AR at 5. Plaintiff then commenced this action on January 11, 2019, filing a supporting brief on July 2, 2019. *See* Dkt. Nos. 1, 11. Defendant filed a response brief on October 18, 2019. *See* Dkt. No. 18.

In support of her motion, Plaintiff argues that the ALJ's decision is unsupported by substantial evidence and based on errors of law in that he improperly found Plaintiff does not have marked impairments, improperly weighed the opinion evidence, failed to incorporate Plaintiff's mental limitations into his residual functional capacity ("RFC") analysis, and failed to consult with a vocational expert. *See generally* Dkt. No. 11 at 19-27.

### III. DISCUSSION

#### A. Standard of review

Absent legal error, a court will uphold the Commissioner's final determination if there is substantial evidence to support it. *See* 42 U.S.C. § 405(g). The Supreme Court has defined substantial evidence to mean "'more than a mere scintilla'" of evidence and "'such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). Accordingly, a reviewing court "'may not substitute [its] own judgment for that of the [Commissioner], even if [it] might justifiably have reached a different result upon a de novo review." *Cohen v. Comm'r of Soc. Sec.*, 643 F. App'x 51, 52 (2d Cir. 2016) (Summary Order) (quoting *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984)). In other words, "[t]he substantial evidence standard means once an ALJ finds facts, [a reviewing court may] reject those facts 'only if a reasonable factfinder would *have to conclude otherwise*.'" *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (quotation and other citation omitted).

To be eligible for benefits, a claimant must show that she suffers from a disability within the meaning of the Act. The Act defines "disability" as an inability to engage in substantial gainful activity ("SGA") by reason of a medically determinable physical or mental impairment that can be expected to cause death or last for at least twelve consecutive months. *See* 42 U.S.C. § 1382c(a)(3)(A). To determine if a claimant has sustained a disability within the meaning of the Act, the ALJ follows a five-step process:

1) The ALJ first determines whether the claimant is engaged in SGA. *See* C.F.R. §§ 416.920(b), 416.972. If so, the claimant is not disabled. *See* 20 C.F.R. § 416.920(b).

2) If the claimant is not engaged in SGA, the ALJ determines if the claimant has a severe impairment or combination of impairments. *See* 20 C.F.R. § 416.920(c). If not, the claimant is not disabled. *See id.*

3) If the claimant has a severe impairment, the ALJ determines if the impairment meets or equals an impairment found in the appendix to the regulations (the "Listings"). If so, the claimant is disabled. *See* 20 C.F.R. § 416.920(d).

4) If the impairment does not meet the requirements of the Listings, the ALJ determines if the claimant can do her past relevant work. *See* 20 C.F.R. § 416.920(e), (f). If so, the claimant is not disabled. *See* 20 C.F.R. § 416.920(f).

5)  If the claimant cannot perform her past relevant work, the ALJ determines if she can perform other work, in light of her RFC, age, education, and experience.  *See* 20 C.F.R. § 416.920(f), (g).  If so, then she is not disabled. *See* 20 C.F.R. § 416.920(g).  A claimant is only entitled to receive benefits if she cannot perform any alternative gainful activity.  *See id.*

For this test, the burden of proof is on the claimant for the first four steps and on the Commissioner for the fifth step if the analysis proceeds that far.  *See Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998) (citation omitted).

**B.  The ALJ's finding that Plaintiff does not have any marked impairments**

To meet or medically equal the medical criteria of the Listings in step three, the ALJ must consider whether "paragraph B" criteria are satisfied.  To satisfy the "paragraph B" criteria, Plaintiff's mental impairments must result in at least one extreme or two marked limitations in one of the following broad areas of functioning: (1) understanding, remembering, or applying information, (2) interacting with others, (3) concentrating, persisting, or maintaining pace, or (4) adapting or managing herself.  *See* AR at 18; 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(E).  A "marked limitation" means that Plaintiff's ability to function independently, appropriately, effectively, and on a sustained basis in a particular area is seriously limited.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(F)(2)(d).  Plaintiff argues that the ALJ erred in finding that she did not have marked impairments in interacting with others and adapting and managing herself.  *See* Dkt. No. 11 at 21-27. For the reasons addressed below, the Court finds that there is not substantial evidence in the record to support the ALJ's finding that Plaintiff had no marked impairments.[2]

---

[2] As the ALJ indicated, this is a Title 16 case with a protective filing date of April 1, 2016, and evidence that pre-dates this period is of limited probative value.  *See* AR at 22.  Thus, the available evidence for the Court to review includes a diagnostic evaluation by Dr. Beth Brown, PsyD, a discharge report from Glens Falls Hospital, treatment notes from Victoria VanScoy-

### 1. Marked impairment in interacting with others

According to the Social Security regulations, an impairment in interacting with others refers to "the abilities to relate to and work with supervisors, co-workers, and the public." *See* AR at 18; 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(E)(2). For example, a person without such an impairment can cooperate with others, handle conflicts with others, respond to social cues, respond to requests, suggestions, and criticism, and can keep social interactions free of excessive irritability and argumentativeness. *See id.*

In his decision, the ALJ found that, despite Plaintiff's history of anxiety and borderline personality disorder, she was "cooperative and related adequately" during evaluations; she reported "spending quality time with her family"; and she was described as "self-motivated and possessing strong interpersonal skills." *See* AR at 18-19. However, the evidence the ALJ cites does not support these statements, nor is it indicative of the record as a whole.

For instance, the ALJ relied on a note in Plaintiff's Discharge Summary from Glens Falls Hospital that her behavior was "calm and cooperative." *See* AR, Ex. 30F at 1002-03. This discharge note was written after she asked for a police escort to the hospital, where she was admitted for five days, because she felt that she was going to "snap" and was afraid that she would cut herself or impulsively harm her child. *See id.* She also reported feeling that she was "at the end of a rope" and that she felt the need to "beat the crap out of someone." *See id.* The

---

McAllister, NPP, a consultative examination and opinion from Dr. Thomas Osika, Ph.D., a consultative examination by Dr. Kenneth Stein, M.D., and two medical source statements by Giovanna Rovetto-Dean, LCSW-R. It is unclear from the ALJ's decision how much weight, if any, he gave to Dr. Brown's evaluation and Ms. VanScoy-McAllister's treatment notes. The ALJ does not give thorough explanations as to why he only affords "little weight" to Ms. Rovetto-Dean's opinion or why he affords "significant weight" to Dr. Osika's opinion. The ALJ should further explain how much weight he gives to each of these providers and his reasoning when reconsidering the evidence.

context surrounding the "calm and cooperative remark" thus shows that this was Plaintiff's demeanor *after* a five-day stay in a hospital due to suicidal ideations and uncontrollable behavior.

Instead of "spending quality time with her family," as the ALJ noted, Ms. VanScoy-McAllister's treatment notes merely stated that Plaintiff's daily functioning included spending time with family.  *See* AR, Ex. 33F at 1082.  The record does not indicate this was "quality" time.  In fact, it shows that Plaintiff was living with her infant son, adoptive mother, four brothers, and an aunt in Corinth, which obviously required her to be around her family.  *See* AR, Ex. 30F at 1002.  Plaintiff complained to Ms. VanScoy-McAllister that she was "struggling" to acclimate to her home after her inpatient hospital stay and that she was "frustrated while at home," felt she had "very little support with her son," complained of "conflict with her family," felt "diminished" by her mother, and had "difficulty getting along with [her] aunt and others" who lived in the home.  *See* AR, Ex. 33F at 1058, 1061, 1067, 1079.  Ms. Rovetto-Dean described Plaintiff's family situation as "toxic" and that Plaintiff was the target of "high emotions and frequent negativity at home."  *See* AR, Ex. 29F at 998.  The substantial evidence does not show, as the ALJ indicated, that Plaintiff spends quality time with her family.  Instead, it shows that Plaintiff has difficulties in cooperating with others and handling critiques and criticism.

In addition to finding that Plaintiff is self-motivated and possesses "interpersonal strengths," as the ALJ quoted, Dr. Brown also commented that Plaintiff "struggles without support" and she has a "blunted" and "depressed affect," which impacts her ability to form sustained connections with other people.  *See* AR, Ex. 24F at 888.  Ms. Rovetto-Dean described Plaintiff's symptoms as having a labile mood, engaging in impulsive, reckless, and self-

destructive behavior, a history of cutting and suicidal ideation, experiencing outbursts of anger, and that she was argumentative.  *See* AR, Ex. 14F at 419.  Dr. Osika also stated that Plaintiff's mood was labile, and her affect was euthymic.  *See* AR, Ex. 8F at 402.  He specifically noted that "[t]here would be moderate to severe concern about her ability to consistently interact with people in the workplace."  *See id.* at 403.  Ms. VanScoy-McAllister noted that Plaintiff struggled with poor motivation, irritability, and had a constantly sad, depressed, and anxious mood, and a fearful, anxious, sad, and depressed affect.  *See* AR, Ex. 33F at 1046-83.  Contrary to the ALJ's findings, the record in its entirety does not show that Plaintiff possesses "interpersonal strengths."

Looking at the record as a whole, the Court finds that the ALJ's reliance on a few stray comments was misplaced.  There is not substantial evidence in the record to support the ALJ's finding that Plaintiff can handle conflict, manage her irritability and argumentativeness, and relate to others; and, therefore, the ALJ erred in finding that Plaintiff does not have a marked impairment in interacting with others.

### 2. Marked impairment in adapting and managing herself

An impairment in adapting or managing oneself refers to "the abilities to regulate emotions, control behavior, and maintain well-being in a work setting."  *See* AR at 18; 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(E)(4).  For example, a person without such an impairment can respond to demands, adapt to changes, manage psychologically based symptoms, set realistic goals, be aware of normal hazards, and take appropriate precautions.  *See id.*

The ALJ found that Plaintiff had only a mild limitation in adapting and managing herself in that she could cook and do laundry, take care of her son, make breakfast, do dishes, and grocery

shop. *See* AR at 19.  The ALJ also noted that, despite her intellectual challenges, Plaintiff was hard-working, motivated, and had done well academically.  *See id.*

The ALJ relied on Plaintiff's statements to Dr. Osika that she "eats, does her laundry, [and] does some cleaning."  *See* AR, Ex. 9F at 402.  However, as Plaintiff argues, a closer look at the record reveals that she cannot carry out those activities without significant support.  *See* Dkt. No. 11 at 24.  Plaintiff testified that she needed verbal reminders from her mother at least two to three times per day to clean and do her chores and that her mother frequently commented that the rooms she was tasked with cleaning were still dirty.  *See* AR at 45.  In her function report, Plaintiff also noted that she needs verbal reminders about her hygiene, to adjust her clothing, to do her chores, and about what is healthy to eat.  *See* AR at 147.  Additionally, although Plaintiff says that she can grocery shop, she does not have a driver's license, lives in a rural area without public transportation, and does not grocery shop alone.  *See* AR at 46, Ex. 14F at 420-21, Ex. 29F at 996, 998.  In fact, Plaintiff testified that she never goes out by herself.  *See* AR at 46.

The ALJ acknowledged Plaintiff's testimony that she takes care of her son, but the evidence in the record also shows that she was only alone with her son approximately "once a week," and the remainder of the time she was surrounded by the various family members with whom she lives.  *See* AR at 46.  Ms. VanScoy-McAllister noted that taking care of her son was a significant "stressor," and Plaintiff's parenting decisions frequently caused strife between her and her mother.  *See* AR, Ex. 33F at 1061, 1067.  Plaintiff also received "crucial" case management and home care assistance through Community Maternity Services to help her with caring for her son.  *See* AR, Ex. 24F at 886, 889.  Dr. Brown noted that Plaintiff "struggles to cope with stressors," such as raising her son, "when her learning/executive functioning/adaptive needs are not adequately supported."  *See id.* at 888.

As far as academic success, the ALJ pointed to Dr. Brown's finding that Plaintiff "did well with her CNA Clinical rotations during high school."  *See id.* at 886.  However, as Plaintiff argues, in high school she qualified for an IEP where she was given extra time on tests, took them on a computer in a special location with minimal distractions, spent one period per day in the resource room doing small group review and reinforcement of course content, and received counseling services.  *See* AR, Ex. 7F at 376-92; *see also* Dkt. No. 11 at 25.  Furthermore, her academic profile was described as "impaired in most basic skill areas," even in such a highly structured and supportive educational setting.  *See* AR, Ex. 7F at 376-92.

Plaintiff reported that, since graduating from high school, she completed "a semester or two here and there" of college.  *See* AR at 36.  However, Plaintiff did not experience academic success at the collegiate level.  The stress of completing her school work contributed to an inpatient psychiatric hospitalization in 2014.  *See* AR at 281.  Dr. Brown also noted that Plaintiff struggled while in South Carolina, where she attended college, because she did not have support.  *See* AR, Ex. 24F at 888.

The record also does not support the ALJ's finding that Plaintiff is only mildly limited in her ability to adapt to change.  Plaintiff points to her function report, in which she indicated that stress of change "throws [her] off balance" and she "tend[s] to freak out."  *See* AR, Ex. 2E at 152.  Ms. Rovetto-Dean indicated that Plaintiff was limited in adapting to changes in the work setting, and that "changes will likely bring about anxiety in [Plaintiff] and potential anger outbursts or mood lability."  *See* AR, Ex. 14F at 421.  The social worker noted that Plaintiff has a marked impairment in responding appropriately to work pressures or changes in routine in a work setting.  *See id.* at 423.  Dr. Brown similarly found that Plaintiff's adaptive skills were in the "Extremely Low" range.  *See* AR, Ex. 24F at 887.

As Plaintiff argues, the regulations provide that a person without a marked impairment should be aware of normal hazards in the workplace. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1. 12.00(E)(4). Ms. Rovetto-Dean listed reckless and self-destructive behavior among Plaintiff's symptoms. *See* AR, Ex. 14F at 419. In Plaintiff's Adaptive Behavior Assessment (ABAS-3), Dr. Brown noted that "her most notable weakness was in the area of Health and Safety," with a scaled score of 1. *See* AR, Ex. 24F at 887. The mean score is 10, and the standard deviation is 3, meaning that Plaintiff's score is three standard deviations below the mean. *See id.* She also had a scaled score of 1 in the area of self-care, which further shows her inability to manage herself. *See id.*

When looking at the entirety of the record, the Court finds that there is not substantial evidence to support the ALJ's finding that Plaintiff can manage herself and adapt to changes. Instead, the record shows that Plaintiff has low adaptive functioning scores and an ongoing need for support in taking care of herself and her son. Her most recent hospitalization also shows an inability to regulate her emotions and difficulty controlling her behavior. Therefore, the Court finds that the substantial evidence in the record does not support the ALJ's finding that Plaintiff does not have a marked impairment in this area.

Since the ALJ cites to no more than a "mere scintilla" of evidence to support his finding that Plaintiff does not have marked impairments, the Court reverses the Commissioner's finding and remands this case to the ALJ for further consideration consistent with this Memorandum-Decision and Order.

## IV. CONCLUSION

Having reviewed the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for judgment on the pleadings, *see* Dkt. No. 11, is **GRANTED**; and the Court further

**ORDERS** that Defendant's motion for judgment on the pleadings, *see* Dkt. No. 18, is **DENIED**; and the Court further

**ORDERS** that the Commissioner's decision is **REVERSED** and this matter is **REMANDED** to the ALJ for further proceedings consistent with this Memorandum-Decision and Order pursuant to sentence four of the Act; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Plaintiff and close this case.

**IT IS SO ORDERED.**

Date:   December 10, 2019
        Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge